## 60895. GEORGIA PORTS AUTHORITY v. MITSUBISHI INTERNATIONAL CORPORATION et al.

BANKE, Judge.

This is a suit by Mitsubishi International Corporation against the Georgia Ports Authority, Southern Railway Company, and Central of Georgia Railway Company to recover damages for their alleged negligence in shipping 12 boxcar loads of plywood by rail from Savannah to Atlanta. Mitsubishi imported the plywood to Savannah from Taiwan for sale to the Crown Door Corporation in Atlanta, and the Georgia Ports Authority loaded it onto the boxcars. By the time it arrived in Atlanta, the cargo had shifted inside the boxcars, making the job of unloading it much more difficult and rendering a portion of it unusable. The question at trial was basically whether the Ports Authority was at fault for failing to block and brace the cargo adequately so that it would withstand the normal stresses associated with rail transport or whether the railroads were at fault for subjecting the boxcars to abnormally rough treatment during switching and coupling operations.

Mitsubishi sought $53,362.53 in damages, a figure arrived at by

taking the original sale price for the goods agreed upon by Mitsubishi and Crown Door ($177,983.08) and deducting the price which they later agreed upon for the sale of cargo in its damaged condition ($124,630.55). Mitsubishi also sought interest from the date of injury in the amount of $12,008.86, for a total recovery of $65,371.39. The jury found against the Ports Authority and in favor of the railroads, awarding damages in the amount of $65,371.39. This appeal followed. *Held:*

1. The Ports Authority contends that Mitsubishi was not the proper party in interest to bring this suit because the evidence established that the goods were shipped "C.I.F. Savannah" from Taiwan, and thus Mitsubishi's duties to the buyer ended before either the negligence or the damage occurred. See generally Code Ann. § 109A-2—320 (2).

The issue of who, as between the buyer and seller, had the risk of loss was not litigated either before or during the trial. The underlying and unquestioned assumption upon which all of the pleadings and the evidence were based was that Mitsubishi was responsible for delivering the goods to Crown Door in Atlanta in satisfactory condition.

Code Ann. § 109A-2—509 sets forth the following rules for determining which party has the risk of loss during shipment: "(1) Where the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation (109A-2—505); but (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there so tendered as to enable the buyer to take delivery . . . (3) In any case not within subsection (1) or (2), the risk of loss passes to the buyer on his receipt of goods if the seller is a merchant; otherwise, the risk passes to the buyer on tender of delivery."

There was evidence to authorize the inference that Mitsubishi had agreed with Crown Door to deliver the plywood in Atlanta. In the first place, their mutual conduct evidences such an agreement; Crown Door initially rejected the goods because of their damaged condition and subsequently agreed to accept them only after Mitsubishi agreed to a reduced price, based on an appraisal of the damages. In the second place, the Georgia Ports Authority billed Mitsubishi, not Crown Door, for its services in blocking and bracing the cargo inside the boxcars. Thus, the evidence authorized a conclusion that the risk of loss was on Mitsubishi during the period in

question, and the trial court did not err in denying the Ports Authority's motion for directed verdict based on the allegation that Mitsubishi was not the proper party in interest to bring this suit.

2. The Ports Authority contends that Mitsubishi's evidence of damages was inadequate because all of its calculations were based on the initial sale price of the goods rather than their initial market value. See *Hoard v. Wiley,* 113 Ga. App. 328 (2) (147 SE2d 782) (1966). However, the vice president and plant manager for Crown Door, who testified that he had approximately 21 years of experience in purchasing and dealing with the type of materials involved in this case, testified that in his opinion the original value of the goods was in fact identical to the original sale price. This was sufficient to support the award of damages. See generally *Rowe v. City Council of Augusta,* 119 Ga. App. 571 (1) (168 SE2d 209) (1969); *Rosenberg v. Mossman,* 140 Ga. App. 694 (1) (231 SE2d 417) (1976); *Housing Auth. v. Starcher,* 149 Ga. App. 402 (3) (254 SE2d 515) (1979).

3. The award of interest cannot stand because of Mitsubishi's failure to comply with Code Ann. § 105-2016, which requires that in order to collect prejudgment interest in an action *ex delicto,* the claimant must first give notice of the claim by registered or certified mail. Mitsubishi cites several cases for the proposition that damages are considered liquidated whenever they are ascertainable by mathematical calculation on the basis of established facts; however, the mathematical calculations in this case were based on expert opinion testimony as to the original value of the goods and the extent of the damage. Thus, the "established facts" could only be established by a jury. Indeed, damages in an action *ex delicto* must always be proven by evidence before they can be regarded as liquidated. See Code Ann. § 81A-155 (a); *Tallman Pools of Ga., Inc. v. Napier,* 137 Ga. App. 500 (2), 504 (224 SE2d 426) (1976); *Dukes v. Burke,* 139 Ga. App. 583 (3) (228 SE2d 729) (1976). Accord, *Republic Ins. Co. v. Cook,* 129 Ga. App. 833 (2) (201 SE2d 668) (1973). Since this is an action *ex delicto* and the statutory notice was not given, the award of interest cannot stand.

The amount of interest included in the jury's verdict is readily ascertainable. Mitsubishi asked for $53,362.53 in damages and $12,008.86 in interest and received a verdict for $65,371.39, the sum of these two figures. The judgment is accordingly affirmed with direction that it be reduced by $12,008.86.

4. The trial court did not err in disallowing the following portion of the deposition testimony of a former employee of the Ports Authority, with reference to the blocking and bracing work performed by another Authority employee named Herschel Sikes: "I don't remember the particular blocking and bracing on this

particular shipment, but I always have known Mr. Sikes to do real good work and he was always conscious of what he was doing, and he wanted to do a good job always, so he would always try his best." The reputation of a defendant or his employee for exercising care in his actions is not admissible to show that due care was exercised on the occasion in question. See Code § 38-202; *Atlanta & W. P. R. Co. v. Newton,* 85 Ga. 517 (2) (11 SE 776) (1890); *Southern R. Co. v. O'Bryan,* 112 Ga. 127 (3) (37 SE 161) (1900).

5. Similarly, the trial court did not err in striking that portion of Sikes' own deposition testimony wherein, asked whether he was aware that the shipments in question had arrived damaged, he responded in the negative and went on to say: "If there was anything ever went wrong with any of it that I braced in seven years, it's more than I have ever known of. I've never heard of a kickback."

6. Also enumerated as error is the admission of two internal memoranda prepared by employees of the Southern Railway Company, both of which recited the conclusion that the Ports Authority had improperly blocked and braced the cargo. The Authority objected that the documents were self-serving.

"A statement is self-serving only when it is of benefit to or in the interest of the one who made it [Cit.], was made out of court and not under oath, and does not include testimony which he gives as a witness. [Cit.]" *Price v. Star Svc. & Petroleum Corp.,* 119 Ga. App. 171, 177 (166 SE2d 593) (1969). See also *Hortman v. Gresham,* 137 Ga. App. 253 (1) (223 SE2d 285) (1976). The author of one of the memos in question testified at trial, reaffirmed his conclusions in the memo, and was subject to cross examination. This document was accordingly not inadmissible on the ground that it was self-serving. The author of the other memo was not present at trial; therefore, that document was clearly subject to the objection that it was self-serving. However, we find that the error was harmless in the context of the other evidence presented during the course of the 4-day trial. See generally, *Dual S. Enterprises, Inc. v. Webb,* 138 Ga. App. 810 (3) (227 SE2d 418) (1976).

7. The following charge to the jury is enumerated as error: "[I]f you find that the plywood in this case was shipped shipper's weight, load and count, or other words of like import, and if you further find that any damage which occurred to such plywood was the direct result of improper loading or blocking and bracing, then I charge you that this is a complete defense on behalf of the defendants Southern Railway Company and Central of Georgia Railway Company and that you must return a verdict in their favor. I further charge you with respect to the defense that the rule above stated is not changed by reason of the fact that employees or agents of the Southern Railway

Company and/or Central of Georgia Railway Company may have inspected, approved, or otherwise been aware of the fact that the loading, blocking and bracing was improper."

It is apparently undisputed that the plywood was in fact shipped "shipper's weight, load and count." Under Code Ann. § 109A-7—301 (4), this constituted a complete defense to the Ports Authority's claim that the railroads were negligent in inspecting and approving the blocking and bracing work performed by the Ports Authority. See *D. H. Overmeyer Co. v. Nelson-Brantley Glass Co.,* 119 Ga. App. 599 (1) (168 SE2d 176) (1969). The charge did not contain any incorrect statement of law and was not argumentative.

*Judgment affirmed with direction. McMurray, P. J., and Smith, J., concur.*

ARGUED OCTOBER 9, 1980 — DECIDED OCTOBER 31, 1980.

*Fred S. Clark,* for appellant.
*J. Wayne Pierce, Henry E. Scrudder, Jr., Robert L. Pennington,* for appellees.